The first case this morning is in re the Commitment of Robert P. Smith. Appearing for appellant is Daniel Wright and Antoinette Palumbo. Is that correct? And Ms. Palumbo, you'll be arguing. And then for the appellee, it's Jason Kriegel. Is that right? That's Kriegel. Kriegel. Okay. Thank you. Ms. Palumbo. Good morning. May it please the court, counsel, my name is Antoinette Palumbo and I represent the appellant Robert Smith. There's a singular issue before the court this morning. And that is whether the trial court abused its discretion in finding that the state had proved that Mr. Smith was a sexually violent person beyond a reasonable doubt. It is clear that the trial court did abuse its discretion. As no rational trier of fact, when viewing this evidence, even in the light most favorable to the state, could have found that Mr. Smith was a sexually violent person. I think it's important to note at the beginning that this is an unusual sexually violent person's case. First of all, there are four experts that testified. Three were on behalf of Mr. Smith. Three experts were hired by the state. Only one of those experts actually testified on behalf of the state. It's also important to note, and this goes into the details of each of the testimony, that Mr. Smith was an adolescent at the time of the offense. And that's important to go to the factor that the state must prove that the mental disorder that Mr. Smith may or may not have creates a substantial probability that he is likely to re-offend with a sexually violent offense. This appeal is not asking you to re-weigh the evidence that was presented to the trial court. Rather, it's a review of that evidence through the lens of the abuse of discretion standard. The one expert that testified on behalf of the state, Dr. Belu Smith, found that Mr. Smith did have a mental disorder under the statute. And that that mental disorder would predispose him to commit a sexually violent offense. However, she was the only expert to do so. And it's important to note that her testimony and her evaluation, which was Exhibit A, presented at trial, did not take into account the fact that that offense was committed when Mr. Smith was an adolescent at the age of 15. She used three actuarial tools. The Static 99R, the Minnesota Test, the MSOT, and the Harris Psychopathy Checklist. Only one of these tools, the Static 99R, found that Mr. Smith was in a moderately high range for sexual offense recidivism. However, none of the other experts used this standard. You mentioned earlier that this was an abuse of discretion standard. Why isn't this a standard where we're viewing this, asking whether any rational trier of fact could have reached the decision that the trial court did here? If I'm understanding your question correctly, you're asking if it's one or the other? Yes, well, I think it's the latter. Correct. But that's different than the abuse of discretion, isn't it? Well, the case law that we cited in our brief, the In Re Commitment of Fields, an Illinois Supreme Court case, is that the standard of review, and you're correct, it is the rational trier of fact. And what we interpreted it as is that the abuse of discretion is viewing all the light most favorable to the state and irrational trier of fact. So perhaps those are two different standards. Well, I believe they are, counsel, and I think the one which I mentioned is the highest standard of review that's applicable. And I think that's the most appropriate standard in this case. Okay, go ahead. And like I said, even in viewing all the evidence presented to the trial court in the light most favorable to the state, there was one actuarial tool utilized by the state's expert to find that Mr. Smith was in a moderately high range. Ms. Bloomberg, could I ask for clarification as to your argument here? If I understand correctly, based on the briefing, one prong of your argument is the respondent had three experts compared to the state's one. And so we should be looking at that as somehow indicative of the frailty of the state's case here. That's one part. The other part being that the trial court took evidence from Dr. Bluth-Smith in regards to respondent's past conduct and actuarial instruments that Dr. Bluth-Smith should not have relied on. Is that right? That's correct. So you're talking now about the actuarial instruments, which include the STATIC-99. Which actuarial instruments are you saying she inappropriately relied on? So it would have been both the STATIC-99R and the Minnesota test. Okay. All right. So now the STATIC-99R, this is where you were talking about the age of the individual being assessed. And didn't one of the respondent's experts actually say that the use of the STATIC-99 was a close call? It is indeed a close call. And I believe that was Dr. Smith that did say that. It's a close call because of the age. Mr. Smith was 15 years old at the time of the index offense. The important thing to note is that, and this was noted by each of the three experts for Mr. Smith, the adolescent brain is not similar to the adult brain. And the reason for the offense is different in an adult offender than an adolescent offender. That was not taken into account at all in Dr. Bluth-Smith's report and her evaluation, which was Exhibit A, and in her testimony. But that came out, right? It did come out. It was argued. It was argued. And did Dr. Bluth-Smith base her opinion on matters other than the STATIC-99R? She did. In her testimony and on cross-examination, it was elicited that her concern for the substantial probability of reoffense was his past conduct. The Supreme Court has stated that past conduct cannot form the basis for a commitment. What do you mean by past conduct? His prior offenses. So he's been charged with one offense, one sexual offense, which is the index offense to this matter. There are other offenses with – there was no charges brought for those offenses. In order to diagnose the mental disorder, which is one of the components that must be proven beyond a reasonable doubt under the Act, in order to diagnose that, it's important to take into account past conduct and background information, including criminal history, substance abuse history. There's many factors that would go towards mental diagnosis. But it's an important distinction to make in this case that the mental diagnosis has to predispose the offender with a substantial probability to reoffend. And that's where the state's evidence failed, even with their one expert. Even if she had found – and she did find there was a qualifying diagnosis. Two of the experts did find that. However, that qualifying mental disorder has to create that probability of reoffense. And that's where those actuarial instruments, utilized only by the state's expert, fail. They cannot be used, or they must be used with great caution, on an offender that committed the offense in adolescence. And that's where the issue comes in, and that's where her evaluation did not take into account any of those factors, any of that adolescence factor. It didn't even discuss it. And all three of the other evaluators did not apply those tools because they looked at the risk factors. And they did find, without a doubt, there is some risk. But that's not the proper standard under the Act at all. Was there an objection made at the time of the hearing as to Dr. Ballew's opinion being based on the actuarial tools? I don't believe that there was an objection made. But on cross-examination, there was discussion about these actuarial tools. And there was also questions posed to the other experts regarding the actuarial tools and how they should be used on adolescents. So here before this Court, on appeal, you're not arguing that her opinion was inadmissible because it was based on an improper basis. You're indicating that it shouldn't have been given any weight? Not that it should have been given any weight, Your Honor, but that it should not have been used to prove that third element, the element that the mental disorder predisposes him to re-offend with a substantial probability beyond a reasonable doubt. And that's one of the primary issues here. The State had to prove all the allegations in its petition. It would have been three allegations to commit a person indefinitely as a sexually violent person. But Dr. Ballew-Smith so opined, didn't she? She did, Your Honor. She did. So we have admissible testimony by one of the persons whose expertise you're not disputing. You say other experts disagreed with her. Why couldn't the trial, in fact, decide that she was more credible? And the trial court certainly could have done that, and perhaps that's what it did. But the problem is, under the rational trier fact standard, that would not have proved Mr. Smith to be a sexually violent person beyond a reasonable doubt. I don't understand what you mean. If she's credible and more credible than the others, why isn't the trier fact permitted to accept her testimony and agree with the conclusion of an expert that she recommended? Well, the trial court, Your Honor, doesn't have unfettered discretion with which to find Mr. Smith to be a sexually violent person. It has to follow the strictures of the statute in order to do so. And this order issued by the trial court did not. The state did not prove beyond a reasonable doubt, and they have the burden of proof in this instance. And that's important to note that the purpose of the statute is it's not a criminal statute. It's a civil commitment statute. The purpose is to protect not only the community from a reoffense, but also to get proper treatment for the offender, for the person potentially to be committed. And this is a man's liberty at stake. And it's important that all three elements, all three allegations in the petition, be proven beyond a reasonable doubt. All of the experts found that the first element, that he committed an indexed sexually violent offense. There was no doubt about that. Two experts found that he had a qualified mental disorder. So there is some dispute. Maybe that was proven beyond a reasonable doubt. What was not proven beyond a reasonable doubt, however, was whether that if he did have a qualified mental disorder, whether that substantially creates a substantial probability of reoffense. And that's what's not had been proven at the trial court level. And that's where a rational trial of fact, even viewing that in the light most favorable to the state, would find that that has not been met. All right. Thank you. Thank you. Mr. Pringle. Thank you. Good morning. Counsel, may it please the court. I'm Assistant Attorney General Jason Pringle on behalf of the state. And this court should reject respondents' attempt to reweigh the evidence on appeal here. As Justice Seidman noted, the only question is whether viewing the evidence in the light most favorable to the state, any rational trial of fact could have found that the state met its burden here. And I think there's no doubt that Judge Kavanaugh's verdict was reasonable and based on the evidence here. As counsel noted, there are three elements that had to be proven under the act. There's no dispute about the first element, which was that a respondent was convicted of a sexually violent offense. In 2003, he was convicted of criminal aggravated assault. I have a four-year-old. The second element, whether a respondent had a mental disorder. As counsel also noted, there were actually two experts here who opined that a respondent had a paraphilic disorder. And they based that conclusion on looking at the behavior that the underlying respondent's previous conviction and his other admitted offenses. He sexually assaulted four young children. I think even counsel would indicate that there is evidence to support the finding of the second element, but it's really the third element. Can you concentrate on that? Certainly, Your Honor. Let me turn to the third element, and that is that the mental disorder created a substantial probability that a respondent would re-offend here. And even though a respondent would like to characterize the evidence at trial as one lonely state's expert out on a limb against three experts for the respondent, there's actually quite a bit of agreement amongst the three experts in discussing the issue of risk here. So, of course, Dr. Bella-Smith, the state's expert, opined that it was her opinion to a reasonable degree of psychological certainty based on looking at a number of different methods for assessing risk that there was this substantial probability. The other three experts were more cautious. They all noted that there was some risk here, but they couldn't reach what they considered to be too high a threshold of the substantial probability standard. But Judge Kavanaugh reasonably concluded that they were being overly cautious, because there was almost universal agreement about what the risk factors were with respect to respondents. Did he say that? Did he say that the respondents' experts were being overly cautious? There was no... I don't believe Judge Kavanaugh gave a written or oral explanation for his verdict, but I think it's fair to infer from his verdict that he credited Dr. Bella-Smith's testimony in this respect. And also the testimony of the other three experts, that there were this long list of risk factors here, supporting the idea that respondent is likely to re-offend. So, for example, all four experts testified that respondent had deviant sexual interest in children. It's interesting that Dr. Cain, who testified earlier that she attributed respondents' previous offenses to antisocial orientation, also said when it came to discussing risk that he had a deviant sexual interest in children. And in particular, she noted studies of adolescent offenders that showed a higher risk for offenders who had offended more than once. And here there's no dispute that respondent assaulted four children. All of the experts agreed that there was an early onset of sexual offending in this case. Respondent began, when he was 12 years old, with two very serious assaults against boys who were 5 and 8, involving penetration and the use of threats. All the experts agreed that this respondent had exhibited a general disposition towards criminality and had a number of prior offenses that were non-sexual in nature. And here the respondent indicates that Dr. Bluesmith inappropriately relied on respondents' past conduct. What is your response to that claim and how do you interpret that term, past conduct? Right, I think there is some confusion here about what exactly past conduct meant. The cases that respondent cites in the brief, Gavin and Samuelson and Isbell, are all dealing with the idea that in a jury trial, when the state introduces evidence about the details of past offenses, that the jury might prejudice and decide the case based on that past conduct, rather than an assessment of the elements in this case, whether there's a mental disorder, and whether that disorder predisposes the respondent to future acts of violence. There's nothing improper about what Dr. Bluesmith did in this case, and Dr. Edsmith as well, which is to look at the behavior that underlies those past offenses, and conclude that there's a deviant interest, a diagnosis of paraphilia, based on what the respondent has done in the past. That happens in every SVP case where an expert gets up and testifies that they are looking at this past behavior to determine that a respondent has this disorder. As Dr. Bluesmith noted, you can't expect the respondent to admit in the interview that he continues to have an interest in children. It just doesn't happen. And I'd also like to address the respondent's other argument, which is that Dr. Bluesmith's testimony should be given no weight, because she relied on actuarial instruments. As I believe Justice Harris noted, Dr. Levitt in particular said it was a very close call whether or not the static 99 was appropriate to use in this case, and the other experts agreed that it can be used with adults who have committed crimes as juveniles, but it had to be used with caution. And here, three of the experts did conclude that they felt it shouldn't be used, but given all of the testimony and the fact that Dr. Bluesmith said that she thought it was appropriate, because the rules for applying the test say that if you've got a 16-year-old or a 17-year-old who has committed an adult crime, that you can be pretty certain that the static 99 is going to apply. It would not apply to a younger offender if that offender commits what she had termed a juvenile crime, which she explained meant sexual exploration amongst peers. Well, isn't it that the application of the static 99R, I don't want to get too immersed in that particular test, but in terms of the evidence, was there any evidence that it could be applied to an individual under age 16? I mean, as I understand it, the test can only be applied in individuals of a certain age, and dependent on their conduct. So, I mean, you couldn't have a 12-year-old assessed even if the conduct was adult in nature. That's correct, Your Honor. So what was the evidence in terms of the age cutoff? The evidence was that in order to apply the test at all, at the time that the test is applied, that the offender has to be over the age of 18. But in looking back at past conduct in applying the coding rules, if the offender is younger than 18, you just have to use caution. And the testimony was that the younger the offender is at the time of the offenses, the more caution you have to use. Did your testimony to Dr. Bluesmith explicitly address this area? Yes. I believe it was on... If you look at pages 191 through 192 of the appendix to Respondent's Brief, she said that it should be used with caution and... If the offender is 16 or 17 at the time that they commit the crime, then you can be very confident that the static 99 will apply. If they're younger and the crime is juvenile in nature, then it would not apply. So she addressed these concerns and said, nonetheless, I think they're legitimate in this case to use? Right. Exactly. Because she said that Respondent, it's clear, committed very adult crimes in nature. It was not sexual exploitation. It's another excellent point that all of these issues were up for cross-examination, up for argument at trial. But the only question here is whether Judge Kavanaugh made a rational decision to credit Dr. Bluesmith's testimony over the other experts. And here, based on testimony from all of the experts, I think we can be confident that it was at least a rational decision that Respondent posed a risk here. I'm happy to answer any other questions. Otherwise, I would just ask that you affirm the judgment. Thank you. Ms. Palombo. Throughout the Appellee's argument, they mischaracterize the statute standard. It's not some risk or a likelihood. It's substantial probability. And similar to the testimony elicited at trial, the state focuses on the past offenses committed by Mr. Smith. There's no doubt that these offenses were committed. When Dr. Bluesmith testified, did she talk about the substantial probability standard? She did. She discussed that standard. She discussed that her concern for recidivism was his past behavior. Well, my point being, though, she was aware of the standard when she testified that, in her opinion, it was met in this case. Yes, she was aware of that standard. And there's no doubt that his past conduct will inform the fact of whether Mr. Smith has a mental disorder. Under the statute, that mental disorder, the state is required to prove, beyond a reasonable doubt, that the mental disorder creates a substantial probability that he will engage in acts of sexual violence. So the past conduct will inform the mental disorder. The mental disorder will inform a person's predisposition for future acts of sexual violence. Some likelihood, some chance, is not enough under the statute to commit someone indefinitely. And the state is right. All the experts looked at different risk factors. They did acknowledge that there was some risk of re-offense. However, and that's where the rational trier fact standard comes in, the trial court was irrational in finding that Mr. Smith was substantially probable to re-offend. And that's why we ask you to reverse this decision. Thank you, counsel. The matter will be taken under advisement and a written decision will issue.